UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARGARITO VALDIVIA,

Plaintiff,

v.                                                  CAUSE NO. 3:20-CV-819-DRL-MGG

DR. NANCY MARTHAKIS,

Defendant.

OPINION & ORDER

Margarito Valdivia, a prisoner without a lawyer, filed this lawsuit alleging he was denied constitutionally adequate medical treatment at the Indiana State Prison. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant. "[T]o state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

Mr. Valdivia alleges he dislocated his *right* shoulder when he fell in his cell at breakfast time on November 18, 2019. ECF 1 at 10. Two days later, on November 20, 2019, he alleges saw Sgt. Wynn in a hallway and told her he had fallen in his cell two days

before. ECF 1 at 11. He says he tried to tell her about his medical problem, but she would not listen to him. *Id*. Two after that, on November 22, 2019, he filled out a sick call request saying he had dislocated his *left* shoulder. ECF 1 at 11-12. It is unclear when or how his left shoulder was injured. It is unclear when or how his right shoulder was repaired. He says he did not have access to a health care request form until the 22nd, but it is unclear who else he saw or told about his injuries over these five days.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the plaintiff must establish the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation marks, brackets, and citations omitted).

Here, it is unclear whether Mr. Valdivia tried to tell Sgt. Wynn about a dislocated left shoulder or right shoulder. However, it is clear he alleges after he told her about falling two days before, she said it was over and walked away. He alleges he *tried* to

explain his injury, but she was not listening. The allegation how little he claims to have told her does not plausibly allege that she had actual knowledge he was at serious risk of harm. He doesn't state a claim, and Sgt. Wynn will be dismissed.

A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

The same day he turned the sick call request slip, Mr. Valdivia was seen by Dr. Nancy Marthakis. ECF 10 at 12. She ordered an x-ray which confirmed a shoulder was dislocated. *Id*. She tried to relocate the shoulder and then had it x-rayed again, but it was still dislocated. *Id*. She then gave him a sling, Tylenol, and naproxen. Mr. Valdivia alleges her treatment during this visit was deliberately indifferent.

For medical professionals to be held liable for deliberate indifference to an inmate's medical needs, they must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). However,

> medical professionals are not required to provide *proper* medical treatment to prisoners, but rather they must provide medical treatment that reflects "professional judgment, practice, or standards. There is not one *proper* way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. The Constitution is not a medical code that mandates specific medical treatment.

*Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks, citations, parenthesis, and brackets omitted; emphasis added). "[A] disagreement with medical professionals . . . does not state a cognizable Eighth Amendment claim . . .." *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Courts "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (quotation marks and citation omitted).

Here, Mr. Valdivia has not plausibly alleged Dr. Marthakis was deliberately indifferent when she saw him on November 22, 2019. She had his shoulder x-rayed twice and tried to relocate it. According to the U.S. National Library of Medicine, "[t]he first step [for treating a dislocated shoulder] is a closed reduction, a procedure in which your health care provider puts the ball of your upper arm back into the socket." https://medlineplus.gov/dislocatedshoulder.html. Though Mr. Valdivia did not agree

with her attempts to "pop" the shoulder back into place, her effort to do so was not a

departure from accepted professional practice. When she did not succeed, he wanted

more than a sling and the two medications she prescribed, but "wearing a sling or other

device to keep your shoulder in place" is also within the scope of accepted professional

practice. *Id*. He was in pain, but "[t]o say the Eighth Amendment requires prison doctors

to keep an inmate pain-free in the aftermath of proper medical treatment would be

absurd." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996).

> Whether and how pain associated with medical treatment should be
> mitigated is for doctors to decide free from judicial interference, except in
> the most extreme situations. A prisoner's dissatisfaction with a doctor's
> prescribed course of treatment does not give rise to a constitutional claim
> unless the medical treatment is so blatantly inappropriate as to evidence
> intentional mistreatment likely to seriously aggravate the prisoner's
> condition.

*Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (quotation marks and citation omitted).

This is why courts "defer to medical professionals' treatment decisions unless there is

evidence that no minimally competent professional would have so responded under

those circumstances." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir.

2019) (quotation marks and citation omitted).

Here, the complaint does not plausibly allege Dr. Marthakis acted outside the

scope of professional standards based on the care she provided on November 22, 2019.

However, it does state a claim against her for not scheduling any follow-up treatment.

Based on the allegations in the complaint, she knew he had a dislocated shoulder which

still needed treatment, yet she discharged him with seemingly no plan to repair the

shoulder. He alleges that for nearly a month, he was not called back to be seen for the

shoulder and no effort to repair the dislocation happened until he was seen at an unrelated chronic care visit on December 17, 2019, when he was sent to the hospital. Therefore, Mr. Valdivia will be allowed to proceed on a claim against Dr. Marthakis for being deliberately indifferent to his dislocated shoulder from November 22, 2019 to December 17, 2019 by discharging him without any follow up care.

At the hospital, he received a CT scan and they tried to manually put his shoulder back into place. ECF 1 at 16. When that did not succeed, he had surgery on December 19, 2019. ECF 1 at 17. Mr. Valdivia alleges he saw many doctors at the hospital. ECF 1 at 16. One of them was Dr. Jain P. Neel. *Id*. It is unclear how Dr. Neel was acting under color of State law when he treated Mr. Valdivia at the hospital, but even if he was, the complaint does not plausibly allege he was deliberately indifferent. Dr. Neel is alleged to have brought Mr. Valdivia a form so he could consent to a blood transfusion if necessary. *Id*. He is alleged to have told Mr. Valdivia he should not have waited a month before coming to the hospital. ECF 1 at 17. After surgery, Dr. Neel is alleged to have told Mr. Valdivia that he would need another surgery. ECF 1 at 18. None of these allegations give any hint that Dr. Neel was deliberately indifferent. Therefore, Dr. Neel will be dismissed.

The complaint alleges Mr. Valdivia filed a grievance about his shoulder. He alleges Health Service Administrator Sherri Fritter told Grievance Specialist Joshua Wallen that "staff cannot force outside doctors to see you when you want them to." ECF 1 at 19 and 42. Mr. Valdivia was not satisfied with the grievance process, but "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of .

. . grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Therefore, Sherri Fritter and Joshua Wallen will be dismissed.

The complaint alleges Nathan Bates was a physical therapist who told Mr. Valdivia he was not improving and that he would write a report saying that. ECF 1 at 19-20. The complaint does not deny that he was no longer improving. Neither does it say what happened as a result. Therefore, the complaint does not plausibly state a claim against Nathan Bates, and he will be dismissed.

The complaint alleges Dr. Diana Thews told Mr. Valdivia she "had a dislocated shoulder before and it healed fine." ECF 1 at 20. He says this minimized the seriousness of his injury. It possible she was trying to give him hopeful encouragement, but either way, Dr. Thews is not alleged to have denied him medical treatment nor prevented him from receiving it from others. Therefore, she will be dismissed.

The complaint names Dr. Miles as a defendant and describes him as a Mental Health Therapist. ECF 1 at 3 and 6. However, it does not say anything else about him. The complaint does not state a claim against him. Dr. Miles will be dismissed.

Finally, the complaint names Wexford Health Services as a defendant. ECF 1 at 2. It alleges Wexford employs several of the defendants. ECF 1 at 19. However, there is no general *respondeat superior* liability under 42 U.S.C. § 1983, and companies are not liable merely because they employ someone. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). The complaint also alleges Wexford "has a policy or practice of denying necessary medical treatment to save money . . .." ECF 1 at 4. A private company performing a State

function can be held liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *Rice v. Corr. Med. Servs*., 675 F.3d 650, 675 (7th Cir. 2012). "Corporate liability exists "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). However, Mr. Valdivia has not alleged facts from which it can be plausibly inferred that he was denied medical treatment for any reason other than an isolated error or omission by an individual employee. Wexford will be dismissed.

For these reasons, the court:

(1) GRANTS Margarito Valdivia leave to proceed against Dr. Nancy Marthakis in her individual capacity for compensatory and punitive damages for being deliberately indifferent to his dislocated shoulder from November 22, 2019 to December 17, 2019, by discharging him without any follow up care in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Wexford Health Services, Sherri Fritter, Diana Thews, Nathan Bates, Miles, Jain P. Neel, Wynn, and Joshua Wallen;

(4) DIRECTS the Clerk to request Waiver of Service from (and if necessary the United States Marshals Service to serve process on) Dr. Nancy Marthakis with a copy of this order and the complaint (ECF 1), pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS Wexford of Indiana, LLC, to provide the United States Marshal Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant who does not waive service if it has such information; and

8

(6) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Dr. Nancy Marthakis to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

October 23, 2020
*s/ Damon R. Leichty*
Judge, United States District Court