UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARGARITO VALDIVIA,

    Plaintiff,

    v.                                  CAUSE NO. 3:20-CV-819-DRL-MGG

DR. NANCY MARTHAKIS,

    Defendant.

## OPINION AND ORDER

Margarito Valdivia, a prisoner without a lawyer, filed an amended complaint alleging he was denied constitutionally adequate medical treatment at the Indiana State Prison. ECF 22. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Valdivia alleges he had a sick call pass and should have gone to medical on November 4, 2019, for treatment of his painful gout that made it difficult for him to walk and use the toilet. He alleges Sgt. Wynn would not let him go because sick call had been cancelled. He also alleges he had another sick call pass on November 7, 2019, but Sgt.

Wynn would not let him go because the facility was on lockdown. Mr. Valdivia is suing Sgt. Wynn because he missed these two doctor's appointments.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the plaintiff must establish the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation marks, brackets, and citations omitted). Here, the complaint does not plausibly allege Sgt. Wynn was deliberately indifferent. She could not take him to sick call because it had been cancelled or because the prison was on lockdown. Though in a medical emergency she could have undoubtedly found a way to get him immediate medical attention, the complaint does not allege Sgt. Wynn believed Mr. Valdivia had a medical emergency that required immediate attention. The complaint only alleges that he missed two doctor's appointments for reasons beyond the control of Sgt. Wynn. As such, it does not plausibly allege she was deliberately indifferent to a serious medical need.

Mr. Valdivia alleges he dislocated his left shoulder when he fell in his cell on November 18, 2019, as he stood to get his breakfast tray. The complaint does not say who distributed the breakfast trays. It does not say whether that person saw or heard him fall. It makes no mention of Mr. Valdivia trying to obtain medical assistance that day or the next. Rather, it alleges that two days later, on November 20, 2019, he met Sgt. Wynn in a hallway and told her he had fallen in his cell days before. He alleges he had injuries on his face and was visibly in pain, but she would not listen to him as he tried to tell her about his need for medical attention. "[A] prison official's decision to ignore a request for medical assistance" can state a claim. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016). Though Sgt. Wynn may not have believed he required immediate medical attention, the complaint plausibly alleges she could have understood that based on her observations and was deliberately indifferent when she decided not to call for medical assistance.

Mr. Valdivia alleges he filed a sick call request form two days later on November 22, 2019, and was taken to medical and seen by Dr. Nancy Marthakis the same day. She ordered an x-ray. It confirmed his left shoulder was dislocated. She tried to relocate the shoulder and then had it x-rayed again, but it was still dislocated. She then gave him a sling, Tylenol, and naproxen. Mr. Valdivia alleges her treatment during this visit was not compassionate. Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care, *Estelle*, 429 U.S. at 104, but they are not entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Merely lacking compassion does not state a claim.

3

For medical professionals to be held liable for deliberate indifference to an inmate's medical needs, they must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). However,

> medical professionals are not required to provide *proper* medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one *proper* way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. The Constitution is not a medical code that mandates specific medical treatment.

*Id.* (quotation marks, citations, parenthesis, and brackets omitted; emphasis added).

Here, Mr. Valdivia has not plausibly alleged Dr. Marthakis was deliberately indifferent in the treatment she provided on November 22, 2019. She had his shoulder x-rayed twice and tried to relocate it. According to the U.S. National Library of Medicine, "The first step [for treating a dislocated shoulder] is a closed reduction, a procedure in which your health care provider puts the ball of your upper arm back into the socket." https://medlineplus.gov/dislocatedshoulder.html. Though Mr. Valdivia did not agree with her attempts to "pop" the shoulder back into place, her effort to do so was not a departure from accepted professional practice. When she did not succeed, he wanted more than a sling and the two medications she prescribed, but "wearing a sling or other device to keep your shoulder in place" is also within the scope of accepted professional practice. *Id*. Dr. Marthakis treated his pain with Tylenol and Naproxen. Mr. Valdivia wanted something more, but "a disagreement with medical professionals . . . does not

4

state a cognizable Eighth Amendment claim . . ..." *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Moreover, "[t]o say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996).

> Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations. A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.

*Id.* (quotation marks and citation omitted). This is why courts "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (quotation marks and citation omitted).

The complaint does not plausibly allege Dr. Marthakis acted outside the scope of professional standards based on the care she provided on November 22, 2019. However, it does state a claim against her for not scheduling any follow-up treatment. Based on the allegations in the complaint, she knew he had a dislocated shoulder that still needed treatment, yet she discharged him with seemingly no plan to repair the shoulder. He alleges that for nearly a month, no effort was made to repair the dislocation until he was seen at an unrelated chronic care visit on December 17, 2019, when he was sent to the hospital. Therefore Mr. Valdivia will be allowed to proceed on a claim against Dr.

5

Marthakis for being deliberately indifferent to his dislocated shoulder from November 22, 2019, to December 17, 2019, by discharging him without any follow up care.

During the evening of November 22, 2019, Mr. Valdivia alleges "my entire left shoulder all the way to my left elbow turned purple." ECF 22 at 8. On December 9, 2019, he alleges he was seen for the dislocated shoulder by Nurse Practitioner Tiffany at sick call and given Tylenol. He alleges he saw her again at sick call on December 15, 2019, where she provided him no treatment. Though there may have been a reason why Nurse Practitioner Tiffany did not provide or obtain additional treatment for the dislocated shoulder, the complaint plausibly states a claim against her for acting outside the scope of professional judgment in violation of the Eighth Amendment.

Mr. Valdivia alleges Health Service Administrator Sherri Fritter schedules medical appointments. He acknowledges he was scheduled for sick call visits and a chronic care visit, but he argues she should have scheduled an appointment with an outside medical provider. However, defendants are not deliberately indifferent in refusing to provide medical treatment they are not authorized to provide. *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012) ("nurses did not have the authority to prescribe medication on their own."). Here, Mr. Valdivia alleges Dr. Marthakis was deliberately indifferent because she did not schedule any follow up treatment. Such treatment could have included an outside medical appointment, but it did not. Without an order for an outside appointment, Administrator Fritter was not deliberately indifferent for not scheduling one. Therefore, she will be dismissed.

6

Mr. Valdivia alleges he filed a grievance that was denied by Joshua Wallen. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of . . . grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). "[P]rison officials who reject prisoners' grievances do not become liable just because they fail to ensure adequate remedies." *Est. of Miller by Chassie v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017). Therefore, the complaint does not state a claim against Joshua Wallen. He will be dismissed.

Mr. Valdivia alleges he went to Medical for a chronic care visit unrelated to his shoulder on December 17, 2019. He does not say who saw him, but alleges his shoulder was determined to be a medical emergency and he was sent to St. Anthony's Hospital. At the hospital, he received a CT scan and two large men tried to manually put his shoulder back into place while he was sedated. When that did not succeed, he had surgery on December 19, 2019. Dr. Jain P. Neel was one of his treating physicians at the hospital. Mr. Valdivia explains " I added Dr. Jain P. Neel as a defendant for testimonial purpose" only. The complaint does not allege Dr. Neel did anything wrong. He may be a witness and he could give testimony, but neither are a basis for suing him. Therefore, Dr. Neel will be dismissed.

Mr. Valdivia alleges when he returned from the hospital on December 19, 2019, his hospital prescribed pain medication was immediately taken and he was subsequently discharged from the medical unit on December 31, 2019, before he was medically ready

to leave. He alleges Wexford Health Services had him discharged; but Wexford is a corporation, and some person must have been the one who actually discharged him. Because he alleges Dr. Marthakis refused to treat him, the complaint plausibly alleges she cancelled his hospital prescribed pain medication and discharged him from the prison medical unit. It also plausibly alleges she refused and (continues to refuse) to provide him medical treatment for degenerative joint disease in his left shoulder.

Mr. Valdivia alleges Physical Therapist Nathan Bates told him he was not improving and a report would be sent to his physician saying he was not improving. He does not allege the physical therapy was provided improperly or that Physical Therapist Bates injured him in any way. Rather, he merely alleges the report has not been written because Physical Therapist Bates' employer, Wexford Health Resources, would look bad if a report showed Mr. Valdivia had not improved. An essential element of a claim under § 1983 is an injury. *Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020); *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) ("[T]here is no tort—common law, statutory, or constitutional—without an injury, actual or at least probabilistic."). Here, there is no indication Mr. Valdivia was injured by the absence of a report saying he had not improved. Therefore, the complaint does not state a claim against Nathan Bates and he will be dismissed.

Mr. Valdivia alleges Dr. Diana Thews mocked him by saying she "had a dislocated shoulder before and it healed fine." ECF 22 at 16. He argues this minimized the seriousness of his injury. It is possible she was trying to give him hopeful encouragement, but either way, Dr. Thews is not alleged to have denied him medical treatment nor

8

prevented him from receiving it from others. Moreover, even if she was acting unprofessionally, mere verbal abuse does not state a claim. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Therefore, Dr. Thews will be dismissed.

Mr. Valdivia names Dr. Miles as a defendant and describes him as a Mental Health Counselor. However, he does not mention him in the body of the complaint. Because there is no allegation Dr. Miles did anything – much less something that injured Mr. Valdivia – the complaint does not state a claim against him.

Mr. Valdivia alleges Wexford Health Services employs Dr. Marthakis and Nurse Practitioner Tiffany. However, there is np supervisory liability under 42 U.S.C. § 1983, and companies are not liable merely because they employ someone. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Nevertheless, a private company performing a State function can be held liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). Corporate "liability exists only when execution of a [corporation's] policy or custom . . . inflicts the injury." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (quotation marks omitted). Mr. Valdivia alleges Wexford has a practice of encouraging employees to save money by being deliberately indifferent to inmates' need for medical treatment. Mr. Valdivia has not alleged facts from which it can be plausibly inferred that he was denied medical treatment for any reason other the actions and/or omissions of individual employees. A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court

9

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). This complaint does not state a claim against Wexford and it will be dismissed.

Mr. Valdivia is seeking both monetary damages and injunctive relief to treat degenerative joint disease in his left shoulder. He says it makes a grinding, clicking sound which causes pain for which he is receiving no medical treatment. The Indiana State Prison Warden has both the authority and the responsibility to ensure that Mr. Valdivia receives constitutionally adequate medical treatment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, the Indiana State Prison Warden will be added as a defendant in his official capacity on a claim for permanent injunctive relief.

In this order, the court has granted Mr. Valdivia leave to proceed against four defendants. Dr. Nancy Marthakis has already entered and appearance, so service of the

amended complaint on her attorney is permitted by Federal Rule of Civil Procedure 5(a)(1)(B) and 5(b)(1). The other three defendants will be served by the United States Marshals Service unless they waive service.

For these reasons, the court:

(1) GRANTS Margarito Valdivia leave to proceed against Sgt. Wynn in her individual capacity for compensatory and punitive damages for denying him constitutionally adequate medical treatment on November 20, 2019, by refusing to call for immediate medical assistance in violation of the Eighth Amendment;

(2) GRANTS Margarito Valdivia leave to proceed against Dr. Nancy Marthakis in her individual capacity for compensatory and punitive damages for denying him constitutionally adequate medical treatment for his dislocated shoulder from November 22, 2019, to December 17, 2019, by discharging him without any follow up care in violation of the Eighth Amendment;

(3) GRANTS Margarito Valdivia leave to proceed against Nurse Practitioner Tiffany in her individual capacity for compensatory and punitive damages for denying him constitutionally adequate medical treatment for his dislocated shoulder on December 9, 2019, and December 15, 2019, by not providing or obtaining treatment other than Tylenol in violation of the Eighth Amendment;

(4) GRANTS Margarito Valdivia leave to proceed against Dr. Nancy Marthakis in her individual capacity for compensatory and punitive damages for denying him constitutionally adequate medical treatment from December 18, 2019, to present by cancelling his hospital prescribed pain medication, by discharging him from the prison

medical unit on December 31, 2019, before he was medically ready, and by refusing to provide any medical treatment for the degenerative joint disease in his left shoulder in violation of the Eighth Amendment;

(5) DIRECTS the clerk to add the Indiana State Prison Warden as a defendant;

(6) GRANTS Margarito Valdivia leave to proceed against the Indiana State Prison Warden in his official capacity for permanent injunctive relief to obtain constitutionally adequate medical treatment for the degenerative joint disease in his left shoulder as required by the Eighth Amendment;

(7) DISMISSES all other claims;

(8) DISMISSES Wexford Health Services, Sherri Fritter, Diana Thews, Nathan Bates, Miles, Jain P. Neel, and Joshua Wallen;

(9) DIRECTS the Clerk to request Waiver of Service from (and if necessary the United States Marshals Service to serve process on) Nurse Practitioner Tiffany at Wexford of Indiana, LLC, with a copy of this order and the amended complaint (ECF 22), pursuant to 28 U.S.C. § 1915(d);

(10) DIRECTS the Clerk to request Waiver of Service from (and if necessary the United States Marshals Service to serve process on) Sgt. Wynn and the Indiana State Prison Warden with a copy of this order and the amended complaint (ECF 22), pursuant to 28 U.S.C. § 1915(d);

(11) ORDERS the Indiana Department of Correction and Wexford of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information;

(12) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Sgt. Wynn, Dr. Nancy Marthakis, Nurse Practitioner Tiffany, and the Indiana State Prison Warden to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

September 16, 2021

*s/ Damon R. Leichty*
Judge, United States District Court