UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARGARITO VALDIVIA,

    Plaintiff,

v.

DR. NANCY MARTHAKIS *et al.*,

    Defendants.

CAUSE NO. 3:20-CV-819-DRL-MGG

OPINION AND ORDER

Margarito Valdivia, a prisoner without a lawyer, is proceeding in this case on five claims. First, he is proceeding "against Sgt. Wynn in her individual capacity for compensatory and punitive damages for denying him constitutionally adequate medical treatment on November 20, 2019, by refusing to call for immediate medical assistance in violation of the Eighth Amendment[.]" ECF 33 at 11. Second, he is proceeding "against Dr. Nancy Marthakis in her individual capacity for compensatory and punitive damages for denying him constitutionally adequate medical treatment for his dislocated shoulder from November 22, 2019, to December 17, 2019, by discharging him without any follow up care in violation of the Eighth Amendment[.]" *Id.* Third, he is proceeding "against Nurse Practitioner Tiffany in her individual capacity for compensatory and punitive damages for denying him constitutionally adequate medical treatment for his dislocated shoulder on December 9, 2019, and December 15, 2019, by not providing or obtaining treatment other than Tylenol in violation of the Eighth Amendment[.]" *Id.* Fourth, he is proceeding "against Dr. Nancy Marthakis in her individual capacity for compensatory

and punitive damages for denying him constitutionally adequate medical treatment from December 18, 2019, to present by cancelling his hospital prescribed pain medication, by discharging him from the prison medical unit on December 31, 2019, before he was medically ready, and by refusing to provide any medical treatment for the degenerative joint disease in his left shoulder in violation of the Eighth Amendment[.]" *Id.* at 11-12. Fifth, he is proceeding "against [Warden Ron Neal] in his official capacity for permanent injunctive relief to obtain constitutionally adequate medical treatment for the degenerative joint disease in his left shoulder as required by the Eighth Amendment[.]" *Id.* at 12.

The defendants filed a joint motion for summary judgment, arguing Mr. Valdivia did not exhaust his administrative remedies before filing suit. ECF 52. Mr. Valdivia filed a response. ECF 70. Dr. Marthakis and Nurse Tiffany—the medical defendants—filed a reply. ECF 72. Sgt. Wynn and Warden Neal—the state defendants—declined to file a reply, and the time for doing so has expired. The summary judgment motion is ripe.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion

2

may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) (emphasis added). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The law takes a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). However, inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, administrative remedies are not

3

considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

To exhaust his administrative remedies, Mr. Valdivia was required to complete three steps: (1) a formal grievance; (2) a Level I appeal to the warden; and (3) a Level II appeal to the Department Grievance Manager. ECF 52-2 at 4. On January 14, 2020, Mr. Valdivia submitted Grievance 110939, complaining he was in severe pain from a shoulder injury and was not receiving any treatment. ECF 52-4 at 7. On January 30, 2020, the grievance office denied this grievance on its merits. *Id.* at 6.

On February 12, 2020, Mr. Valdivia appealed. *Id.* at 3. On February 20, 2020, the grievance office issued a receipt for Mr. Valdivia's Level I appeal, noting a response from the warden was due on February 27, 2020. *Id.* at 4. On February 27, 2020, the warden issued a response denying Mr. Valdivia's Level I appeal. *Id.* However, Mr. Valdivia asserts he did not receive this response. ECF 71 at 7-8.

On March 23, 2020, Mr. Valdivia submitted a request for interview form to the grievance specialist, asserting he wanted to informally grieve the fact he had not received any response to his Level I appeal. *Id.* at 8; ECF 71-1 at 1. The grievance specialist responded that Mr. Valdivia could not submit a new grievance complaining of the warden's lack of response to his appeal, as that is a non-grievable issue. *Id.*; *see* ECF 52-2 at 4 (listing "appeal responses from the Warden" as a non-grievable issue).

4

On August 13, 2020, Mr. Valdivia submitted a second request for interview form, requesting a copy of the facility response to his grievance. ECF 71-1 at 2. In response, Mr. Valdivia received a copy of the response report showing that his Level I appeal had been denied. *Id.* at 6. On August 26, 2020, Mr. Valdivia submitted a Level II appeal. *Id.* There is no indication in the record whether the grievance office received or responded to Mr. Valdivia's Level II appeal.

Here, it is undisputed the grievance office received Mr. Valdivia's Level I appeal on February 20, 2020, and a response from the warden was due on February 27, 2020. ECF 52-4 at 4; ECF 52-2 at 13 ("Warden/designee responses to offender appeals shall be completed within five (5) business days of receipt of the appeal"). In his response, Mr. Valdivia argues his administrative remedies were unavailable because he did not receive any response to his Level I appeal on or before February 27, 2020. However, even accepting as true that Mr. Valdivia did not receive a timely response to his Level I appeal, the offender grievance process still provided him with available remedies he did not exhaust. Specifically, it provided that if an offender does not receive a timely response to his Level I appeal, he may submit a Level II appeal as if the Level I appeal had been denied. *See* ECF 52-2 at 13 ("If, after receipt of the appeal response, the offender is still dissatisfied, or no response is received within the time frame, he/she may appeal to the Department Offender Grievance Manager"). Thus, accepting as true that Mr. Valdivia received no response to his Level I appeal by February 27, 2020, the offender grievance process allowed him to submit a Level II appeal at that time. But Mr. Valdivia did not do so. Instead, he waited until March 23, 2020 to submit an informal grievance regarding not

receiving a response to his Level I appeal, and then waited until August 2020 to request a copy of the facility response and submit an untimely Level II appeal. *See* ECF 52-2 at 13 (an appeal must be submitted to the Grievance Specialist "within five (5) business days after receiving the grievance response"). Thus, because it is undisputed the offender grievance process allowed Mr. Valdivia to submit a timely Level II appeal beginning on February 27, 2020, but he did not do so, the undisputed facts show Mr. Valdivia had available administrative remedies he did not exhaust. Summary judgment is therefore warranted in favor of the defendants.

For these reasons, the court:

(1) GRANTS the defendants' motion for summary judgment (ECF 52); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Margarito Valdivia.

SO ORDERED.

March 2, 2023                                                *s/ Damon R. Leichty*
                                                             Judge, United States District Court